Carey v. Carey As I said, triable issues of material fact abounded. The court also erred in looking the music on a measure-by-measure analysis without any context of the whole of the choruses. For example, the court analyzed measures 2, 3, 4, and 8 separately and the court made its own factual determinations that those measures were not substantially similar based on its own methods without any evidence before it and contradicting Dr. Walzer's testimony. The court just assumed that measures 6 and 7 were the same as 2, 3 because it took out of context what Dr. Walzer said, that he analyzed measures 6, 7 in the same manner as measures 2 and 3. But Dr. Walzer looked at the entire whole of the melody and determined his deposition testimony's declaration supports this, is that the whole melody starts with measure 1, it is resolved by the second measure, proceeds in the third measure's similarity. The fourth measure, even though it's not different, goes back to the fifth measure, 6, 7, and 8, and you have a complex structure. And he determined that the entire chorus as a whole was substantially similar to our song, to the Pellant song. Now the district court never even looked at the entire chorus as a whole. The district court parsed out measures 1 and 5 on a scenes-of-fair analysis, which I'll talk about in a little bit, and then compared measures 2, 3, 4, 6, 7, and 8. As this circuit has ruled, the combination of even an unprotected element with protected elements can constitute sufficient copyright protection to afford a finding of substantial similarity. You said that there was a misinterpretation in concluding that 2 and 3 and 6 and 7 were substantially, or nearly identical, I think was the statement. Well, he said nearly identical, but to dissect, to analyze them separately and not compare them as to the whole in the chorus... Oh, I understand that part of it. But I thought you were saying that they could not even assume that 2 and 3 were, for all practical purposes, the same as 6 and 7. Well, he did say in his report that they were almost exactly the same, the analysis is almost exactly the same, but to the extent almost exactly isn't exactly, that's a tribal issue of material fact in the analysis. As literary works, and this circuit has determined that they look at theme, plot, sequence of events, mood, setting, pace, characters, and dialogue, nowhere, at least nowhere I could find in the Ninth Circuit opinions, does a court break or dissect the elements into its constituent parts. I mean, this circuit talks about the dissection of elements into its constituent concepts. For example, theme, plot, sequence of events, mood, setting, pace. And in Croft, Croft seemed to intimate that the specific elements of similarity or dissimilarity is not permissible when such elements are a dissection of the constituent parts of the works. Here, the court by its own order looked at the melody, but it dissected the melody into measures. It leads to an absurd result because in looking at literary works, courts don't look at it chapter by chapter, sentence by sentence, word by word. So I believe that there's a demarcation between subparts, that the court went beyond tribal issue of fact, material issue of tribal fact about how the court looked at it, in that it broke the constituent parts of the choruses and did not analyze the concepts, the constituent parts of the concepts. As a result of this test, the extensive test has been obliterated as a result of this case and the over-dissection that the court did of the two melodies. Walzer compared the choruses, as I said. The court also improperly weighed Dr. Walzer's testimony. They rejected his testimonies out of hand as subjective. The court analyzed the notes. Dr. Walzer analyzed the notes and he didn't analyze the pitch numbers. In his declaration and his reports, Dr. Walzer criticizes the analysis of pitch numbers without reference to the notes they mean. The court employed the pitch number analysis, the pitch sequence analysis, really without any authority and acted subjectively in that regard. In the literary work, there was really no expert testimony or any testimony to counter Dr. Walzer's opinions. The court seems to, also in its analysis, seems to require complete identity in its comparison and taking substantial similarity tests out of context. Clearly, in copyright infringements, we don't always have virtual identity. Under the inverse ratio rule, the court seems to criticize Dr. Walzer not looking at all the notes because the court, in looking at all the pitch numbers, seems to determine that they're not exactly the same. As Dr. Walzer testified in his deposition, that's the boneheaded way, with respect to the court, in looking at how to analyze music. Dr. Walzer also testified that in his musicological experience, you're supposed to look at, in a 4-4 time sequence, which these songs are, that you're supposed to analyze the pitch emphasis and how they appear on the beat. The court's reliance on ZZ Top and criticizing Dr. Walzer is really distinguishable here. ZZ Top stands for precisely what the defendants are criticizing Dr. Walzer for doing, is what the defendants in that case, as Dr. Walzer, who was their expert, did. The defendants in this case have highlighted Measure 1 here for analysis and completely ignored the context Measure 1 takes and the complete context of the chorus. They've parsed out Measure 1, like that happened in ZZ Top. In ZZ Top, the court criticized this parsing out of a guitar riff in attempting to prove Sheen's affair. Also, ZZ Top is significant in that the court, in that case, refused to strike the declaration of the expert. Dr. Walzer is saying at the summary judgment juncture, it's not appropriate to weigh the expert's testimony. Also, I find it significant in ZZ Top that the court indeed took judicial notice of the song which was claimed to be Sheen's affair to the song at issue in ZZ Top. The court took judicial notice, I believe it was Spirit of the Sky, and listened to the guitar riff and compared it to that and determined on its own that no reasonable juror would find that that is substantially similar to the guitar riff at issue in ZZ Top. Can I ask you about Sheen's affair? Is that originally a French phrase? I believe it is, Your Honor. What does it mean literally? I believe it means that in comparison to literary works, it means that it contains the same scenes as two literary works compares the same scenes of like the same type. So they've taken, it's a literary expression brought into music then. I believe so. And you want to say something on the claim that the He's a Jolly Good Fellow is reflected in this piece, so it's beyond copyright? Yes, Your Honor. I'm happy to address that. And that goes, that follows my argument on ZZ Top in that the court took judicial notice of Spirit in the Sky and listened to the guitar riff at issue in that song and compared it to Spirit in the Sky and determined that no reasonable juror can find that they were substantially similar. The court in this case, district court, never even indicated that it listened to For He's a Jolly Good Fellow. Dr. Walser's testimony completely indicated there, there are no relation at all for He's a Jolly Good Fellow in this song. The court never listened to it. You mean to say there was no evidence presented that the first measure was more similar to For He's a Jolly Good Fellow than it was the alleged infringing work? Well, the court indicates that there was, but if you look at Dr. Walser's report, which was attached to our opposition for summary judgment, he completely explained that those songs are taken completely out of context because they're completely different generic styles, different time signatures, different measures and stuff. But going back to your Honor's question about For He's a Jolly Good Fellow, we contend that the district court erred by not even listening to the songs and recognizing that the scenes of fear of one of those love songs is comparable to For He's a Jolly Good Fellow. Now, if you have a jury trial, will those songs be played to the jury? For the intrinsic analysis, yes, in comparison to the two songs. But For He's a Jolly Good Fellow, I believe the court or the jury can listen to both songs and determine if they're substantially similar. And also in Satava v. Lowry, which appellees have cited as germane to the scenes of fear issue, the court did look at 200 different photos and compared that to the jellyfish sculptures at issue. The court pretty much ruled in the air that the first measure of our song, one of those love songs, was comparable for He's a Jolly Good Fellow. We also attached a request for the court to attach excerpts and listens to the songs. And I would request that the court grant our motion and listen to the two songs and take judicial notice that appellant song as a matter of law is not substantially similar to For He's a Jolly Good Fellow. And if I may, I'd like to reserve the rest of my time for rebuttal. Certainly. Thank you. Thank you. Robert Dudnick of counsel to Mitchell Silverberg and Knopp, attorney for the defendants and the appellees. May it please the court. Before addressing some points in reply brief that I've never had an opportunity to address before, I want to address some points just made in oral argument, some of which were never made before. In no particular order, counsel, as I understood him, was saying that somehow relying upon numbers to represent the pitch of notes was improper. Well, that's a fallacious argument. That's a system used all the time, applying the numbers to the seven pitches of the diatonic scale. And if the court chooses to look at some point, that's what Professor Walser did in his report. You may note that excerpt of record 0 0 0 1 8 6. I took his argument to be somewhat different. I thought his argument was that relying on numbers alone was an improper methodology, not necessarily the use of representational numbers. In other words, that the idea of emphasis and rhythm had to be considered as well as reducing the notes to numbers and comparing the numbers. Well, let me address that point, Your Honor. Professor Walser acknowledged, as he had to, that melody is a function of the pitch series of a series of notes and the rhythm pattern of a series of notes. Pitch and rhythm combine melody, not just pitch, but you have to have the time values. And indeed, that is a fundamental problem with Professor Walser's analysis. Nowhere in his report did he ever address the issue of the time values of the notes, the rhythm patterns of the notes. And in the reply brief and in the opening brief, plaintiffs, despite the fact that that is a fundamental issue, have skipped over that matter. Why is it important? Because as we went through the measures at his deposition, one by one, those that we were comparing for substantial similarity, he acknowledged in each case, Measures 2, Measures 3, and Measures 8, that the rhythm patterns were, quote, very different, end quote. He was the one who ignored rhythm. What Professor Walser did, as this Court is aware, I believe from the briefs, is with respect to the measures that were compared for substantial similarity, look at only a handful of the notes, ignore the rest as if they didn't exist, and with respect to those that he looked at, oftentimes only two of several, stated that these gave an overall impression of similarity. An impression of similarity. I asked him, when you talk about impression of similarity, Professor Walser, are you talking about your impression or the impression of the average man on the street? And he acknowledged both. He was talking about how he believed two notes forgetting rhythm would cause the average person to perceive the melody line. That is spot on a matter of the intrinsic test. Well, maybe, but for example, if the notes are pure ornamentation, that wouldn't be the case, would it? Ornamentation, if you look at a measure, would look significantly different when you compare measure to measure on the sheet music than the melody might look. Or if you reduce it to numbers. You could produce a lot of numbers with ornamentation in different pitches, but that wouldn't change. It might be the identical melody line. Right. I don't disagree that if you had something that was pure ornamentation, it might be disregarded, but I don't see anything where Professor Walser, nor did the district court, explain that something was ornamentation. What he did was take the notes of the melody line. If you mean ornamentation where a singer sings a trill or slurs two notes and they're tied together, that would be one thing, but that's not what Professor Walser did. He took the lyric, this is one of those love songs, and took the note that accompanied each of those syllables. That's what forms melody. I don't believe that there's anything that reflects that he was taking decorative notes, notes of the background singers, notes that were trilled, notes that were slurred. He took the notes that were spot on and then ignored time value, rhythm altogether. Just said, well, I believe that, for example, two of these notes in the third measure, using a good example, give an impression of similarity, despite the fact that he acknowledged that when you took the notes of that measure and compared them, they were very different, and when you took the rhythm patterns, they were very different. I hope I've answered your question. Well, you have. I think, though, it strikes me that that is awfully good material for cross-examination. I think the problem in this case, it seems to me, and I'm curious at your answer, is that to reach the conclusion that the district court did, you have to reach the conclusion that the methodology used by Dr. Walser is wrong as a matter of law. Isn't that basically where we are in this case? That is wrong. That is correct. And that is difficult at this juncture for me to see, that is incorrect as a matter of law. Well, I will acknowledge that we're in new territory. However, in the objective test, where this court has said time and time again that the methodology is analytic dissection and comparison of the concrete elements, I think that that means that you're supposed to look and analyze and compare all of the concrete elements and not ignore some of them. What does it really mean, dissection by measure, though? I'm sorry? Does it really mean dissection? Does that mean measure by measure? Well, Your Honor, I can't answer that by pointing to any authority. Well, it seems very strange. I mean, it seems to be a musical absurdity. Well, Your Honor, let me suggest this. If that's the case, then why did Professor Walser do it in his own court? Well, I don't know. I mean, I'm not defending prison, but we've got to say what the law is. I think the analogy with, I don't know, whether it's chapter by chapter or paragraph by paragraph will be absurd in the literary work, and that doesn't look any better in the musical work. Well, when you look at sequence of events, Your Honor, in a literary context, a film or a... No, let's say with a book. Okay, with a book. Do you think you can go chapter by chapter? Well, I think if you're applying sequence of events, I think you look at each of the events in the sequence, and if none of them are similar, you don't have a substantial similarity of sequence of events. Now, I don't know if that's... But you wouldn't take some arbitrary measure, like the chapter numbers in chapter one, look at chapter one, chapter... That's absurd. You have to take overall views. Well, but I... Your Honor, what I don't understand... I understand what you're saying. What I don't understand is where you're only comparing, essentially, eight measures of music, how you look at the whole without looking at the measures. The measures... I mean, I appreciate what you're saying. I appreciate that you are in a position of having to determine whether a test should be... a new test should be developed, or developing a new test. But here you do have Professor Walser, and I don't mean to repeat myself, using a measure-by-measure analysis. He's their expert. He's the person they called upon. That's what he did. And I don't see how it's inappropriate. I suppose if you say, well, let's forget measure-by-measure. Let's look at all of the notes other than the first and fifth measures. Let's look at all of them, and line them up, you're still going to have a very different melody line. If each of the measures is different, both in terms of pitch and rhythm, then the whole has to be different in terms of pitch and rhythm. So I don't see how, even if you say, using a measure-by-measure analysis is not the proper way, that leads to a different conclusion. Well, let me put it another way. You read the district court's opinion, and it sounds like the district court had a certain expertise and was trying it out, and that didn't seem to be the function of a district judge. Well, respectfully, I disagree with you. I don't think a district judge is to apply its own expertise but I think the district judge was looking at the admissions made by the expert at his deposition and reaching conclusions. That's my analysis of what the district court did. I think the strength of your argument, in a sense, is the use of the word impression, which tends to indicate that it was not using the extrinsic and objective analysis. However, in reading the district court opinion, I must say that it did seem to say that the only way of analyzing these kinds of cases was to do a measure-by-measure analysis, which I think, as Judge Nunes pointed out, seems to me to be not counterintuitive, if you will. Well, I... I mean, if you can... There are all sorts of ways you can show that measures are different and, in fact, they're the same melody or the same theme. Ornamentation is just one, but there are many, many other ways. You take Ella Fitzgerald's scat music. That didn't necessarily transform the original work into her own work. No, I appreciate that. And if you took a measure-by-measure analysis of that, you would see it far different. In fact, it would be completely dissimilar to the original work. But if you looked at the... Well...  and then you would have no comparison. But if she sang the melody line before she went into the scat, you would have a... You would have a melody line. Scat, I suppose, doesn't have melody or a certain amount of it. I happen to be a jazz fan myself and very familiar with that. But when you have a highly skilled singer like your client who uses a substantial amount of ornamentation, if you just take the notes on a page, sheet music, it's going to result in a... It could well result... I'm not saying this is the case, but it could well result in a... different piece of work on paper. In fact, its sound has substantial similarity in context, even using the objective test. There was sheet music here. Professor Walter just chose... He said he generally found sheet music to be unreliable and therefore he didn't use it. Well, it wasn't copyrighted in sheet form, I do... I assume. There was printed sheet music. I mean, I... I understood the copy... They just copyrighted the recording without the... Well, what was sent to the copyright office, Your Honor, for the deposit copy was in fact the recording, which is permissible. There happened also to be printed sheet music, which likely had its own copyright, but I can't vouch for that. But there was printed sheet music by one of the subsidiaries of the defendant publishing company. And I'm not arguing with you. I'm just trying to give you some of our concerns so you can... From my concerns, so you can kind of respond to it. I'm doing the best I can. The... The ornamentation, I mean, I really am familiar, as I'm sure you know, with the style used by Mariah Carey. And she does trill notes and she does slide notes. But if you look at Professor Walser's transcriptions, he didn't transcribe the trills. He didn't... Right, I understand that. I'm just using that as an example. Melody notes. Yeah, I'm just using that as an example of how sheet music, if you took all the ornamentation and put it down on sheet music then compared it analytically through just a purely number analysis, you'd come up with a substantially different looking measure, although for the same work. That's my only point. I realize that ornamentation isn't particularly at issue here in this case. But the troubling fact to me is that what the district courts seem to imply is that's the only way you can do that. And whether Dr. Walser's analysis, and it may be flawed, was incorrect as a matter of law and cannot be used as expert testimony in this field. That's the troubling part to me. I'm not saying... Let me respond briefly to that point. Assuming... I think the issue is not whether the district court's approach was correct. The question is, was Professor Walser's approach and his admissions sufficient to raise a question of fact. I think that's what the focus is. And if... And it's undisputed. We see he looked at only some of the notes. I can't stress this enough. He ignored rhythm altogether. It's just... You don't see anything about quarter notes, half notes. He skipped that because it didn't work with what he was trying to do. He was trying... He was working backward. He was saying, what impresses the man on the street? What impresses the man on the street is a stress note here. And doing it measure by measure, because that's what he did, is these two notes here. That's what creates, to use his words, the overall impression of similarity, which I don't have to repeat myself. You're aware, as I view it, has placed him squarely within the boundaries of the intrinsic test. This may be a strange question, but in your view, could two works that were extrinsically different sound the same intrinsically? I think they could. I think that's the reason this circuit has created two tests in copyright. Unquestionably. That seems to be inherent when you split into extrinsic and intrinsic, but it creates kind of a strange situation. Well, I mean, perhaps it does. Two things come across to the listener as being, gee, these are the same songs. And then you can say, well, yeah, but they're really not, because if you look under all what the listener hears, you see these differences. Well, they may sound similar to the listener because of performance, because of production, because of key, which is not protected by copyright, because of tempo, which is not protected by copyright. Tempo is very different than rhythm, of course. Tempo is just beats per minute. So that may create an impression of similarity, but this Court has certainly, going back into the 70s, with the Sid and Marty Croft decision, said there are two separate tests and said that expert testimony is appropriate on the objective test, but not appropriate on the subjective-slash-intrinsic test, and no summary judgment on the subjective-intrinsic test. We'll let the jury look at that, but the courts are the gatekeeper to make sure that, at least as I view this law and this circuit, to make sure that juries aren't, well, I don't know how else to say it, don't make mistakes by looking at material that, for example, isn't protected in a song. For example, the issue of filtering. That's one of the functions of the courts, to filter out that which is unprotected, and that's not just in literary cases. The courts have made clear it's in every kind of case, including music cases. In the Smith v. Jackson case, decided within the last five years by the Ninth Circuit Court of Appeals, by your brethren. Now then, in the few minutes I have left, I have about a minute and a half, I want to look at that issue of the first measure. Your Honor, you asked about Sans Affair. I can't give you a literal translation. This court has, in Smith v. Jackson, used the word commonplace. But I don't think you have to reach Sans Affair to decide that that first measure is not protected, and I want to tell you why. I'm firmly of that opinion. The issue of lack of originality. If something is not original, it's filtered out because it's not protected. No question about that, case after case in this circuit. Now, what results in lack of originality? Access by the writers and substantial similarity. Now then, on the issue of access, did the writers of the plaintiff's songs have access to For He's a Jolly Good Fellow? That was never contested in the opening brief or in the district court, nor could it be reasonably contested. The plaintiffs conceded in the response to undisputed facts that For He's a Jolly Good Fellow is very well known in American society. That's a quote. They conceded that, as they had to. And Professor Walser testified that it was unlikely, in his view, as a professor of American music, that the plaintiff writers were unfamiliar with it. Access, it was established. We don't have to prove, that the writers knew the song under the test in this circuit and every other circuit. All we had to prove was did they have a reasonable likelihood that they were aware of it. Access, done. Now then, substantial similarity between the first measure of one of those love songs and For He's a Jolly Good Fellow. One of the panel asked the question, and I'm going to come back to it. Dr. Walser unequivocally said, taking into account both pitch and rhythm, not just pitch, pitch and rhythm, and that's in our brief, that the first measure of one of those love songs was more similar to For He's a Jolly Good Fellow than the first measure of one of those love songs was to Thank God I Found You. And they say that Thank God I Found You and one are substantially similar. They don't have an argument. All they come back to, again and again, when you get to those first measures and substantial similarity, and I'm talking about one of those love songs, and For He's a Jolly Good Fellow, is the rest of the songs are different. There's a lot of stuff about the rest of the songs, but when you look at the first measures, and by the way, they make some point about the pickups being different. If you read Professor Walser's testimony, where they cite to it, he says just the opposite of what they say. He says ignore the pickups. They don't count. And he acknowledged that these two measures were substantially similar. So you've got access and you've got substantial similarity, and that results as a matter of law. They've acknowledged it as a matter of law, and that results in lack of originality. I think Sans Affair is a perfectly good defense, but it's only one of the three that we presented with respect to that first measure that it's not protected. I'm over my... When you get into... How far do you get in For He's a Jolly Good Fellow with one measure? For he's a joll? No, no. Actually it's... The pickup is four, the word four, and then the lyric is he's a jolly good fellow. I believe that's seven notes, seven pitches. And that's one measure? That's all in the first measure? Well, Professor Walser, in his deposition, said it was. Plaintiffs now say it spills over into the second measure. Nevertheless, and that's different from what Professor Walser said. He straight out, flat out, unequivocally said it was in the first measure. But even if it were in the second measure... No, I understand. I understand your argument. It's in the phrase of the song. It was just one of those love songs, he's a jolly good fellow. It's seven notes, seven pitches, each one identical. And that's why he found them... He found those two measures more similar than the similarity that he found in the two measures in the songs at issue. Have I answered your question, Your Honor? Yeah, I think so. You are over time, but we have taken up a lot of your time with our questions. Did you have any points you wanted to quickly make before sitting down? Your Honor, actually, I think I'd be wasting your time to try and come up with a wrap-up sentence. I think in the course of answering your questions, and I appreciate the penetrating nature of them, I truly do, that I've been able to make the key points that I intended to make. So with that, I'll sit down. Thank you for your presentation. Rebuttal? Addressing counsel's first point that if you don't have... If all the measures don't match up exactly, the whole can't be similar, I disagree. For example, in two songs that are the same, if one starts three beats later than the first one, if you look at each measure separately, they're not going to be the same because each measure is not going to match up. Do you think we should do it measure by measure or not? No, I don't think so. Didn't Dr. Walter get us on that track? He talked about the measures as an arbitrary point,  all the measures together, carrying from one into the other, and the whole chorus sections. And I urge the Court to look back at our evidence concerning such. Well, the strength of your opponent's argument seems to me, as I mentioned, I want you to have a chance to address it, is that when you finish with Dr. Walter's testimony at the end, it does appear as though he's making a subjective analysis rather than using the objective test. How do you respond to that criticism? Well, he explains that in comparing the two songs at issue. Sure. I mean, he uses the phrase, the word impression. Well, he's talking about his impression. He's an expert in musicology. Right. He's calling the melodies from listening to the music. He's not looking at the sheet music. He's experienced to know that the two songs at issue are in 4-4 time signature. He knows that pitches that are stressed on the beat are the ones that you hear more, and that's how he's analyzing it. He's being completely objective in his own point of view. Necessarily, it involves some subjective listening to the song and determining, pulling out of thin air, what music is and putting it for comparison, but he's being objective. Nevertheless, there's really been no evidence presented that he's been subjective. I mean, the court has only looked, the district court only looked at the fact that all the notes were written down and he didn't necessarily compare each of the notes, but he did explain that ornamentation prevented him from doing that. That's why he pulled the stressed notes together. Also, with regard to the rhythm patterns, counsel stated there's no evidence that Dr. Walzer analyzed the rhythm patterns. I urge the court to go back to his report and declarations on 236 to 238 and look at that. He did analyze the rhythm patterns. His declaration considered that and his three reports he submitted. The court inappropriately weighed Dr. Walzer's testimony and disregarded his declaration. They did so in their order. Also, I note the court, the district court, noted that... What do you do with rhythm in those two pages? Was it in its effect in creating a melody? I'll read it if you don't have much time. I'm not an expert on music, but rhythm isn't just a quarter note, half note, eighth note together. You're supposed to look at the note in context of its length and where it stands in the measure. You don't look at it in a vacuum. That's what Dr. Walzer explained in his declaration. Also, counsel for Appellee's has presented that there's no evidence in the record to support counsel's argument that you look at pitch series versus pitch emphasis. Dr. Walzer has explained that's musicologically not sound. In terms of... Once again, I believe this court should listen to the songs. We'll take that under advisement. We haven't ruled on that yet, but it does invite us to make a subjective analysis. At least for scenes of fare, because the court in ZZ Top did take judicial notice of... I understand your argument. We'll decide that and let you know. Also, on the scenes of fare argument, Appellee's state that they mischaracterized Dr. Walzer's testimony that the first measure is not unusual, but yet again, even if none of the patterns is remarkably unusual, in and of itself, the fact that both these works contain all of the similarities, including melody, pitch, rhythm, tempo, key, same generic style, mood, gives rise to triable issues and material fact concerning the substantial similarities of the protected expression involved. Also... Also, I want to remind the court in reviewing, it's necessary to resolve all the ambiguities in favor of the non-moving party. Here, Dr. Walzer's testimony was not counter-veiled. It was only through subjective analysis by the court. The court also, in a footnote in its order, indicated that no reasonable juror could find that the two expressions are substantially similar, both extrinsically and intrinsically, citing Olson. I believe the court took its own subjective view in reviewing the songs and didn't analyze it under the extrinsic test. Also, the court must assume the truth of all of our evidence and the district court fell into error in rejecting our evidence presented by not considering our declaration making findings on these issues. The issue of substantial similarity was shown to be a substantial genuine issue in fact and the district court accepted the version of respondent and weighed the facts of the defendants versus Dr. Walzer's opinion. In closing, because I see my time's up, I just, in the court's review, I think it's important that the court keep in mind the whole extrinsic test and how it applies to musical works. For literary works, it's clearly defined, but in musical works, pulling the essential elements and concrete elements, one way is, according to the appellees, is you pull it by measure by measure. We contend this is without musicological foundation and Dr. Walzer has objected to this type of view. He pulled all the different concrete elements which all really explain the melody even though key in and of itself is not protectable. Key and melody, it's indicative of the type of melody. In terms of tempo, tempo isn't subject, separately protectable, but in writing a melody, the tempo is relevant to how the melody is, the protectable expression of the melody. With no tempo, the melody is just a bunch of pitches in isolation and accordingly, we believe tribal issues material fact. Thank you, counsel. I want to thank both of you for your excellent presentations and excellent briefing. It's a very interesting case and one that we will undoubtedly analyze for a while. The case is here to be submitted and we are in adjournment for this morning. This court for this session stands adjourned. Thank you.
judges: Canby, Noonan, Thomas